# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RICK MERCADO,

       Plaintiff,

v.

CITY OF ECORSE,
MICHAEL MOORE,
in his official and personal capacities,
and NARDA BRUNO, in her
official and personal capacities,

       Defendants.

Case No. 2:20-cv-11436
Hon.

_____/

Nakisha Chaney (P65066)
Jessica Lieberman (P68957)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
*chaney@sppplaw.com*
*lieberman@sppplaw.com*

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff and veteran police officer Rick Mercado, by his attorneys, Salvatore Prescott Porter & Porter, brings this Complaint for ongoing retaliation by the Ecorse police department leadership to punish Plaintiff for his involvement in reporting corrupt police practices.

## PARTIES, JURISDICTION AND VENUE

1. This is a case involving the deprivation of Plaintiff's First Amendment rights and violation of Michigan's Whistleblower Protection Act.

2. This Court has jurisdiction over Plaintiff's federal claim under 42 U.S.C. § 1983, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

3. The Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367.

4. Pursuant to 28 U.S.C. § 1391(b), venue lies in the Eastern District of Michigan as the events giving rise to this action occurred in Ecorse, Wayne County, Michigan.

5. Plaintiff Rick Mercado is a citizen of the United States and a resident in the Eastern District of Michigan.

6. Defendant City of Ecorse is a political subdivision organized under the laws of Michigan and located in the Eastern District of Michigan.

7. Defendant Michael Moore is the Director of the Ecorse Department of Public Safety ("police department") and a resident in the Eastern District of Michigan.

8. Defendant Narda Bruno is the Deputy Director of the Ecorse Department of Public Safety and a resident in the Eastern District of Michigan.

9. Plaintiff sues Defendants Moore and Bruno in their individual and official capacities.

10. At all material times Defendants Moore and Bruno acted under color of law, meaning under color of the statutes, codes, ordinances, regulations, policies, customs and usages of the United States and the State of Michigan.

## GENERAL ALLEGATIONS

11. Plaintiff Rick Mercado is a 20-year veteran of the Ecorse police department.

12. During his two decades of service, Plaintiff has maintained a stellar performance record, earning multiple commendations and awards, and garnering a high degree of respect from leadership as well as from fellow officers.

13. In 2008, in recognition of his "bravery, tenacity and professionalism," Plaintiff was awarded the Departmental Citation for Meritorious Service in the Line of Duty.

14. In 2015, Plaintiff was awarded a life-saving award, when he saved the life of a baby whose mother passed away.

15. In 2016, Plaintiff was promoted from Officer to Corporal.

16. During his tenure, Plaintiff has had more than 5,000 traffic-related police encounters with civilians, yet Plaintiff, to his knowledge, has never received a single citizen complaint.

17. Exemplifying the excellence with which Plaintiff performs his job, in 2018, a citizen whom Plaintiff stopped for a traffic violation and to whom Plaintiff issued a citation, contacted the City of Ecorse to praise Plaintiff, stating, "I want to express my appreciation to Officer Mercado for demonstrating admirable professionalism and respect … making Officer Mercado's conduct, frankly, incredible."

18. Until the occurrence of the events at the center of this lawsuit, Mercado and Director Moore had a good relationship.

19. Director Moore confided in Plaintiff over the years about various departmental matters.

20. Plaintiff has recommended numerous improvements to the police station, which Director Moore approved and implemented.

21. Director Moore frequently commended Plaintiff for his outstanding performance and work ethic.

22. Plaintiff also had a good working relationship with Deputy Director Bruno. Bruno was initially a Sergeant. She was promoted to Deputy Director during the course of these events.

23. Plaintiff and Deputy Director Bruno were friendly with each other. It was not unusual for Bruno to ask Plaintiff to do personal favors for her, and, even

though she outranked him, Bruno and Plaintiff addressed each other on a first-name basis. In fact, Bruno often referred to Plaintiff by his nickname.

24. Thus, prior to the events giving rise to this Complaint, Plaintiff had a solid performance record, strong and positive working relationships with the Director and Deputy Director, and his career was under no threat of harm.

**Plaintiff Engages In Protected Speech**

25. Then, in or around October 2018, Plaintiff learned information suggesting that police officers were using impounded vehicles for their personal or other improper purpose and directing tow company personnel to falsify information to insurance companies regarding the nature of the impound or property.

26. The information Plaintiff received related to, among other persons, Ecorse Police Officer Kevin Barkman.

27. Plaintiff reported the information he received to Sgt. Geoff Howard, who asked Plaintiff to gather additional evidence regarding the practice.

28. Plaintiff complied, obtaining a recording evidencing the illegal practice.

29. Plaintiff provided the evidence to Sgt. Howard and together they informed another officer, Sgt. Cornelius Herring, about the information Plaintiff gathered evidencing potential criminal activity by police officers, including insurance fraud and theft or conversion of seized vehicles.

30. Sergeants Howard and Herring contacted the FBI, providing information in federal and state investigations into one or more criminal vehicle seizure schemes reportedly orchestrated by police officers in several metro-Detroit departments and involving illegal police raids; police taking, misuse and/or conversion of seized vehicles; falsification of LEIN records; and/or insurance fraud.

31. When the FBI and Michigan Attorney General's Office investigated, Defendant Moore admonished Plaintiff to stay away from Sergeants Howard and Herring, saying they were a "cancer."

32. Director Moore reportedly also told another officer to stay away from Sergeants Howard and Herring.

33. Plaintiff was unwilling to disassociate from Sergeants Howard and Herring, as Plaintiff supported and facilitated their exposure of police corruption to outside law enforcement agencies.

34. Plaintiff also directly participated in the external investigation, speaking several times directly to an Assistant Attorney General regarding his knowledge of the corruption and his involvement in obtaining evidence.

35. Defendant Moore observed Plaintiff's continued association with Sergeants Howard and Herring and, in or before December 2019, Defendants learned about Plaintiff's involvement in the corruption reports and external investigation.

**Defendants Retaliate**

36. Defendants targeted Plaintiff because of his continued association with Sergeants Howard and Herring and because he provided information in the external investigation.

37. Bruno's attitude toward Plaintiff changed. She became icy toward Plaintiff, ignoring him and demanding that he formally address her by rank and last name. This was in stark contrast to their previously warm, casual and friendly relationship.

38. Deputy Director Bruno and Director Moore targeted Plaintiff, impugning his reputation, attacking his integrity, and issuing unmerited misconduct claims in an obvious effort to discredit Plaintiff, build a file against him, and force his resignation or termination.

39. Plaintiff, who was an award-winning officer with no discipline in 15 years, suddenly began to receive multiple unwarranted disciplinary actions.

40. On June 19, 2019, Defendant Moore accused Plaintiff of improper police procedure and falsifying information in a report regarding a car accident in which another officer was involved.

41. Plaintiff denied the charges, responding, "Dir. Moore so much has gone on during your time here as Director and you have done nothing, you have not investigated any misuse of time off, numerous excessive use of force complaints,

7

numerous citizen complaints about racism. At this time I feel I am personally being attack[ed] because of my relationship with Sgt. Herring and I feel that the Ecorse Police Dept has [become] very hostile."

42. In a June 20 response, Director Moore dismissed Plaintiff's complaints as "baseless insubordinate allegations."

43. On July 10, 2019, Defendant Moore informed Plaintiff that he was being investigated for false claims that Plaintiff harassed and made false statements about Corporal Barkman, the officer implicated in the suspected corruption described above.

44. On July 18, 2019, Plaintiff received a notice of a Chief's Hearing for August 1, 2019.

45. The hearing concerned Director Moore's June accusations that Plaintiff mishandled an accident involving another officer and the unjust charges that Plaintiff, among other things, made false statements and was incompetent in performance.

46. Sergeants Herring and Howard represented Plaintiff in the hearing.

47. On or around October 10, 2019, Director Moore, relying on the false accusations that Plaintiff falsified a police report, suspended Plaintiff for ten days, five days of which were to be served and five days of which were suspended subject to dismissal, pending completion of a six-month probation with no further incidents.

48. On or around the same day, Sgt. Herring was suspended for 15 days with a six-month probation.

49. Approximately one week later, Sgt. Herring was fired.

50. On November 25, 2019, Deputy Director Bruno issued another write-up against Plaintiff for supposedly failing to confiscate string from an inmate.

51. On February 19, 2020, Plaintiff was informed of a rumored effort to get a warrant issued against him, of which Director Moore reportedly had knowledge and/or in which, upon belief, he was involved.

52. On February 22, 2020, Plaintiff sent a memo to City Administrator Richard Marsh, Ecorse Mayor Lamar Tidwell, and the City Council, protesting the "threats and false allegations by Dir. Moore and [the] city attorney," and iterating his several complaints of an ongoing hostile environment.

53. On March 20, 2020, Deputy Director Bruno charged Plaintiff with misconduct for complaining directly to city leadership, stating, "While it is perfectly within your right to make a complaint, it is a violation of General Order 02-01 to make such a complaint in this manner . . . [and] [y]our action violates the tenets of your current 6-month probation."

54. The rule cited by Bruno specifically states, "An officer or employee shall, when wishing to forward a written communication or information to a ranking officer, forward such communication through the chain of command. An officer may

9

bypass the chain of command when, in the officer's or employee['s] opinion, the information should be brought to the immediate personal attention of the Chief of Police … or other supervisor of different division within the department. However, justification for bypassing the chain of command may be required."

55. This rule clearly concerns general inter-department communications.

56. It does not (and cannot) prohibit reports to city leadership of misconduct by the police chief, and, even if applicable, the rule clearly allows an officer to bypass the chain of command when "in the employee's opinion" the information should be escalated.

57. Plaintiff had a constitutional right to send his correspondence to city leadership.

58. Plaintiff did not violate any department rules in doing so.

59. The charges are just another example of Defendants pushing baseless allegations of misconduct against Plaintiff to ruin his record and force his separation from the department.

60. Notably, Plaintiff is not the only person suffering retaliation.

61. Sgt. Howard also sent a memo to city leadership, stating, among other things, that the accusation against him for misconduct are, "hypocritical due to my knowledge and proof of the Director's involvement allowing and covering up the

actions of coworkers he knows violated LEIN and committed those exact violations the Director accuses me of, which are of a potential criminal capacity."

62. Sgt. Howard also stated, "This disdain and animosity against myself and Sgt. Herring is due to myself and Sgt. Herring going to the Attorney General's Office for being threatened/disciplined by Director Moore, and misconduct between Director Moore, a coworker, and Mayor Tidwell involving questionable acquisition of city vehicles."

63. Sgt. Herring, upon information and belief, has also filed suit for retaliation.

64. Director Moore, who has final decision-making authority with regard to the policies, practices and procedures in the Ecorse Department of Public Safety and with regard to the actions taken against Plaintiff, caused, ratified and allowed these retaliatory actions against Plaintiff.

65. Within the Ecorse Department of Public Safety there is a custom of tolerance for or acquiescence to federal rights violations committed by police officers evidenced by Director Moore and the City overlooking, failing to investigate, and/or failing to punish excessive force claims, citizen complaints of race-based discrimination, complaints of police abuse, and complaints by police officers of unlawful retaliation for reporting actual or suspected police corruption.

66. There is also an illegal unwritten policy that permits the punishment of officers who report actual or suspected police corruption and misconduct by marring their performance and conduct records and stalling or ending their careers, as evidenced by Director Moore's admonishment that Plaintiff stay away from (isolate) Sergeants Howard and Herring, Plaintiff's retaliatory treatment for his associations and involvement in reporting actual or suspected police corruption and misconduct, Sgt. Howard's retaliatory treatment, and Sgt. Herring's retaliatory treatment and termination.

## COUNT I
### First Amendment Retaliation – Freedom of Speech
### U.S. Const. Amend. I, 42 U.S.C. § 1983
### *(against all Defendants)*

67. Plaintiff incorporates and restates here all previously stated allegations.

68. The public has a vital interest in the integrity of those commissioned to enforce the law.

69. A police officer's perception of potential corruption is deserving of vigilant protection by the First Amendment, as the public has an obvious concern with how a police department is operated.

70. Thus, statements involving the report of actual or suspected illegal activity, public corruption, misconduct in police operations, and abuse of police power are constitutionally protected matters of public concern.

71. Statements opposing and grieving unlawful conduct designed to deter or punish the report of actual or suspected illegal activity, public corruption, misconduct in police operations, and abuse of police power are constitutionally protected matters of public concern.

72. Plaintiff engaged in protected speech, including:

   a. when he provided information regarding actual or suspected illegal activity, public corruption, misconduct in police operations, and abuse of police power to the Attorney General's Office; and

   b. when he opposed and reported unlawful retaliatory conduct designed to punish and deter the report of actual or suspected illegal activity, public corruption, misconduct in police operations, and abuse of police, including in his reports to City Administrator Marsh, Mayor Tidwell and the Ecorse City Council.

73. Plaintiff's reports to an outside law enforcement agency and to Ecorse City leadership of suspected and actual unlawful activity within the police department was outside of his ordinary job duties.

74. Defendants had no legitimate countervailing interest in suppressing or punishing Plaintiff's speech.

75. Even if there were such, Plaintiff's interest in speaking out on these matters of public concern outweighed any interest the city had in suppressing the speech.

76. As a result of Plaintiff's speech, Defendants took multiple adverse actions that would deter an ordinary person from exercising his First Amendment rights, including but not limited to:

   a. impugning Plaintiff's character and integrity;

   b. sullying Plaintiff's exemplary performance record with manufactured misconducts;

   c. accusing Plaintiff of falsifying a report;

   d. subjecting Plaintiff to retaliatory complaints and investigations;

   e. unjustly suspending Plaintiff; and

   f. charging Plaintiff with rules and probation violations for reporting complaints about retaliation by the Director directly to city leadership.

77. Plaintiff's protected speech was a substantial and motivating factor in Defendants' adverse actions, implemented specifically to punish and deter Plaintiff.

78. As a result of Defendants' ongoing retaliatory campaign, Plaintiff continues to suffer significant anguish, distress and harm to his reputation and performance record. His career remains under threat.

## COUNT II
### First Amendment Retaliation – Freedom of Association
### U.S. Const. Amend. I, 42 U.S.C. § 1983
### *(against all Defendants)*

79. Plaintiff incorporates and restates here all previously stated allegations.

80. The First Amendment of the United States Constitution protects the freedom of association.

81. Plaintiff thus has the constitutional right to associate with persons, including Sergeants Howard and Herring, for the purpose of engaging in speech protected by the First Amendment, including speech related to the report of actual or suspected illegal activity, public corruption, misconduct in police operations, and abuse of police power.

82. Plaintiff also has the constitutional right to associate with persons, including Sergeants Howard and Herring, for the purpose of opposing and grieving conduct designed to deter the report of suspected illegal activity, public corruption, misconduct in police operations, and abuse of police power.

83. Plaintiff exercised his right of association when he associated with Sergeants Howard and Herring for the abovementioned purposes.

84. Defendant Moore attempted to deter Plaintiff's association with Sergeants Howard and Herring, and Defendants punished Plaintiff for his continued association, including by imposing unjust discipline.

85. As a result, Plaintiff suffered and continues to suffer significant harm.

**COUNT III**
**Michigan Whistleblower Protection Act**
**M.C.L. § 15.361, et seq.**
*(against all Defendants)*

86. Plaintiff incorporates and restates here all previously stated allegations.

87. Reporting to a public body an actual or suspected violation of a law, regulation, or rule, and being asked by a public body to participate in an

investigation, are protected activities under Michigan's Whistleblower Protection Act.

88. The Ecorse Department of Public Safety, the City of Ecorse and Michigan's Attorney General's Office are public bodies within the meaning of M.C.L. § 15.361(d).

89. The City of Ecorse is an employer, and Defendants Moore and Bruno are its agents, within the meaning of M.C.L. § 15.361(b).

90. Plaintiff engaged in protected activity, including when he:

   a. reported and provided information regarding actual or suspected illegal activity to Sergeants Herring and Howard;

   b. was asked by Sgt. Howard to participate in an investigation of the suspected illegal activity;

   c. provided information regarding actual or suspected illegal activity to the Attorney General's Office; and

   d. reported unlawful retaliatory conduct designed to punish and deter the report of actual or suspected illegal activity to Director Moore, Deputy Director Bruno, City Administrator Marsh, Mayor Tidwell and the Ecorse City Counsel.

91. Defendants discriminated against Plaintiff for engaging in this protected activity, including by:

   a. sullying Plaintiff's exemplary performance record with manufactured misconducts;

   b. accusing Plaintiff of falsifying a report;

   c. subjecting Plaintiff to retaliatory complaints and investigations;

   d. unjustly suspending Plaintiff; and

   e. charging Plaintiff with rules and probation violations for reporting complaints about retaliation by the Director directly to city leadership.

92. As a result, Plaintiff suffered, and continues to suffer, significant harm.

## RELIEF REQUESTED

Plaintiff seeks all available relief against Defendants, including:

a. compensatory damages;

b. exemplary/punitive damages;

c. attorney fees, costs and interest;

d. removal of all retaliatory discipline and documentation from Plaintiff's records;

e. an order prohibiting further acts of wrongdoing; and

f. all other appropriate legal and equitable relief.

Respectfully submitted,
SALVATORE PRESCOTT PORTER & PORTER, PLLC

Dated: June 2, 2020

/s/ Nakisha N. Chaney
Nakisha N. Chaney (P65066)
Attorney for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
chaney@spplaw.com

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in the above-captioned matter.

                                      Respectfully submitted,
                                      SALVATORE PRESCOTT PORTER &
                                      PORTER, PLLC

Dated:   June 2, 2020               /s/ Nakisha N. Chaney
                                      Nakisha N. Chaney (P65066)
                                      Attorney for Plaintiff
                                      105 East Main Street
                                      Northville, MI 48167
                                      (248) 679-8711
                                      chaney@spplaw.com